**TREEHOUSE LAW, LLP**
Joshua Nassir (Cal. Bar No. 318344)
jnassir@treehouselaw.com
Benjamin Heikali (Cal. Bar No. 307466)
bheikali@treehouselaw.com
Ruhandy Glezakos (Cal. Bar No. 307473)
rglezakos@treehouselaw.com
Ammad Bajwa (Cal. Bar No. 358564)
abajwa@treehouselaw.com
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH PEARSON, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff*,<br><br>v.<br><br>MONDELEZ GLOBAL LLC,<br><br>        *Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of California False Advertising Law<br>2. Violation of California Consumers Legal Remedies Act<br>3. Violation of California Unfair Competition Law<br>4. Breach of Express Warranty (Cal. Com. Code § 2313)<br>5. Breach of Implied Warranty (Cal. Com. Code § 2314)<br>6. Quasi Contract/Unjust Enrichment/Restitution<br>7. Negligent Misrepresentation<br>8. Intentional Misrepresentation / Fraud<br><br><br>**DEMAND FOR JURY TRIAL** |

Table of Contents

I.      **INTRODUCTION** ................................................................................................ **3**

II.     **PARTIES** ............................................................................................................ **4**

III.    **JURISDICTION AND VENUE** ........................................................................ **5**

IV.     **FACTUAL ALLEGATIONS** ............................................................................. **5**

        A.      Defendant Promises "100% Sustainably Sourced Cocoa" on OREO Products ..... 5

        B.      The Reality: Defendant Uses a "Mass Balance" System That Mixes Cocoa ......... 6

        C.      Mass Balance Breaks the "100%" Promise Regarding Product Composition ....... 7

        D.      Defendant Hides the Truth About Mass Balance From Consumers. ...................... 9

        E.      Mass Balance Claims Deceive Consumers and Enable Greenwashing. ............... 10

        F.      Plaintiff Was Misled by Defendant's False Promise ............................................. 11

        G.      Defendant's Deceptive Labeling Creates Ongoing Harm ..................................... 12

        H.      No Adequate Remedy at Law ................................................................................ 12

V.      **CLASS ACTION ALLEGATIONS** ................................................................. **13**

VI.     **CLAIMS** ........................................................................................................... **15**

VII.    **RELIEF** ............................................................................................................ **26**

VIII.   **DEMAND FOR JURY TRIAL** ...................................................................... **26**

CLASS ACTION COMPLAINT

Plaintiff Jeremiah Pearson ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, brings this Class Action Complaint against Mondelez Global LLC ("Defendant"), based upon personal knowledge as to himself, and upon information, investigation and belief of his counsel.

## I.    INTRODUCTION

1.    Defendant sells millions of OREO cookies claiming they contain "100% Sustainably Sourced Cocoa." This promise, displayed prominently with Defendant's "Cocoa Life" logo—Defendant's purported global sustainability program for cocoa—is false.

2.    Consumers reasonably believe "100%" means *all* the cocoa *inside* the package they buy comes *entirely* from farms in Defendant's Cocoa Life sustainability program. They expect the label promises both the composition of the cocoa and that Defendant can verify this origin.

3.    But Defendant breaks that promise. Defendant uses an accounting and supply system called "mass balance."[1] This system allows Defendant to source cocoa claimed to be "sustainable" from its sustainable Cocoa Life program which is mixed with conventional, non-certified cocoa throughout the supply chain.[2]

4.    Defendant admits the mixing happens. Defendant also admits it does "not know exactly how much Cocoa Life cocoa is in each individual product."[3] Because Defendant sources the cocoa from a supply chain which mixes the cocoa, it loses traceability and cannot verify the composition of the ingredients in the final cookies relative to the promised sustainable source.

5.    The "100%" claim on the package is therefore meaningless regarding the actual ingredients' source and composition. Consumers do not receive OREO cookies made entirely with cocoa from Cocoa Life farms. Instead, they get an unknown, untraceable mixture of conventional

---

[1] Cocoa Life, FAQ, Mondelez Int'l, https://www.cocoalife.org/faq/ (last visited Apr. 18, 2025)
[2] *Id.*
[3] *Id.*

and potentially sustainable cocoa—possibly containing very little, or even zero, cocoa that actually came from the promoted Cocoa Life farms.[4]

6.    Defendant hides this truth from consumers. The OREO packaging fails to explain that "100% Sustainably Sourced Cocoa" does not accurately describe the composition or guarantee the traceability of the cookies inside the box due to the use of mass balance.

7.    Plaintiff and other consumers relied on Defendant's false "100%" promise about composition and traceability. They paid for cookies believing they were made entirely with Cocoa life sustainable cocoa. Had they known the truth about the mass balance mixing, uncertain composition, and lack of traceability, they would not have purchased OREOs or would have paid significantly less.

8.    This class action seeks to stop Defendant's deceptive marketing and hold Defendant accountable for misleading consumers about the composition and traceability of its OREO products, recovering the money consumers lost as a result.

## II.    PARTIES

9.    Plaintiff Jeremiah Pearson is a citizen of California residing in Sacramento, California. In or around December 2024, Plaintiff purchased the OREO Double Stuf Chocolate Sandwich Cookies and OREO Mini Chocolate Sandwich Cookies Products from a Walmart store located in Sacramento, California. Before making these purchases, Plaintiff saw and relied upon the "100% Sustainably Sourced Cocoa" representation and the "Cocoa Life" logo prominently displayed on the Products' packaging. Based on these representations, Plaintiff reasonably believed that the cocoa ingredients in the Products were exclusively and traceably sourced from farms meeting Cocoa Life sustainable standards, and that Defendant had the ability to verify this. Had Plaintiff known that the cocoa is mixed with non-Cocoa Life sustainable cocoa or actually contains no Cocoa Life sustainable cocoa at all, and that the claim does not guarantee the physical content or origin of the cocoa in the specific packages he purchased, he would not have purchased

---

[4] *See, e.g.*, Tulipshare, *What is Chocolate Washing?*, https://tulipshare.com/work/what-is-chocolate-washing (last visited Apr. 18, 2025)

the Products, or would have paid significantly less for them. Plaintiff suffered economic injury as a direct result of Defendant's misleading representations.

10.    Defendant  Mondelez Global, LLC is a Delaware limited liability company with its principal place of business located at 905 West Fulton Market, Suite 200, Chicago, Illinois 60607. Defendant is one of the world's largest snack food companies and manufacturers of chocolate products, including the products at issue. Defendant, directly or through its agents, is responsible for the formulation, manufacturing, labeling, advertising, marketing, distribution, and sale of the products throughout California and the United States.

### III.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).   The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

12.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in California, purposefully avails itself of the California market by marketing and selling large quantities of its products, including the products at issue, to consumers within the state, and the claims asserted herein arise from Defendant's contacts with California.

13.    Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, Plaintiff purchased the products in this District, and a substantial part of the events or omissions giving rise to the claims, including the consumer transactions based on Defendant's misleading representations, occurred in this District.

### IV.    FACTUAL ALLEGATIONS

**A. Defendant Promises "100% Sustainably Sourced Cocoa" on OREO Products**

14.    Defendant manufactures, markets, and sells OREO brand cookies nationwide. This case concerns all OREO brand cookie products sold by Defendant during the Class Period bearing

the representation "100% Sustainably Sourced Cocoa [-] Cocoa Life", with a Cocoa Life logo (the "Products"). [5]

15.    Defendant prominently places its "Cocoa Life" logo and the unqualified statement "100% Sustainably Sourced Cocoa" on the front of the Products' packaging.

16.    A representative example of a front-label is shown below:



17.    Defendant presents Cocoa Life as its global cocoa "sustainability" program, designed to "make cocoa right" by addressing challenges related to farmer livelihoods, community empowerment, and environmental protection, including forest conservation. [6]

18.    These statements assure consumers seeking ethical products that the Products' cocoa ingredient composition meets the Cocoa Life standards.

**B.  The Reality: Defendant Uses a "Mass Balance" System That Mixes Cocoa**

19.    Defendant's promise about composition and traceability is false. Defendant uses an accounting method called "mass balance," [7] not a system ensuring the physical contents are 100% from Cocoa Life farms.

---

[5] The Products are fully defined in Exhibit A ("Ex. A")
[6] Cocoa Life, Homepage, Mondelez Int'l, https://www.cocoalife.org/ (last visited Apr. 18, 2025)
[7] Cocoa Life, FAQ, Mondelez Int'l, https://www.cocoalife.org/faq/ (last visited Apr. 18, 2025)

20.    Mass balance inherently involves mixing. It allows Defendant to mix cocoa beans from Cocoa Life farms with non-certified cocoa beans from other farms during shipping, storage, and processing.[8]

21.    Defendant admits this: "beans from Cocoa Life registered farms are mixed with other beans."[9]

**C. Mass Balance Breaks the "100%" Promise Regarding Product Composition**

22.    Mixing destroys traceability. Defendant loses the ability to track cocoa beans from Cocoa Life farms into a specific package of OREOs. Consequently, Defendant cannot verify that the cocoa in any given package actually contains the Cocoa Life cocoa promised on the label.

23.    Defendant knows this. Until recently, Defendant admitted this directly on its official Cocoa Life website, stating: "we do not know exactly how much Cocoa Life cocoa is in each individual product[.]"[10] This admission confirms the lack of knowledge about composition resulting directly from the loss of traceability.

24.    Shortly after receiving Plaintiff's CLRA Notice Letter dated January 30, 2025— which specifically highlighted this admission—Defendant removed the statement from its website. *Compare Figure 1 (Website Before CLRA Notice Was Sent) with Figure 2 (Website After CLRA Notice Was Sent).[11]*

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

1

2

*Figure1: Before CLRA Notice Letter Was Sent to Defendant*



*Figure 2: After CLRA Notice Letter Was Sent to Defendant*



25.    The "100%" claim is therefore untethered from the actual ingredients' source, composition, and traceability.

28

CLASS ACTION COMPLAINT

26.     It reflects only an accounting trick: Defendant pays for a certain volume of Cocoa Life cocoa, even though that is not what they ultimately receive and put in the Products. [12] Not a gram of cocoa in any given package must come from a Cocoa Life farm.

27.     Defendant could avoid this bait-and-switch by using the well-known "segregation" model—which keeps certified beans physically separate from conventional beans throughout the supply process and would truly deliver 100 % sustainable cocoa—but it rejects that option because segregation costs more. [13]

28.     Consumers buy OREOs containing an unknown, untraceable mixture of cocoa, potentially with physically zero cocoa from the Cocoa Life program, despite the "100%" promise regarding the Products' contents. [14]

**D. Defendant Hides the Truth About Mass Balance From Consumers.**

29.     Defendant fails to disclose its use of mass balance and the resulting compositional uncertainty and lack of traceability on the Product packaging where the prominent "100% Sustainably Sourced Cocoa [-] Cocoa Life" claim is made.

30.     This omission is material. Reasonable consumers understand "100% Sustainably Sourced Cocoa [-] Cocoa Life" to describe the product's actual contents, not an obscure accounting method allowing mixed origins.

31.     By not qualifying the representation on the package, Defendant misleads consumers about the Products' composition.

32.     Notably, some companies using mass balance provide some level of disclosure, demonstrating Defendant could be more transparent. For example, after a *New York Times* investigation, CamelBak acknowledged it would update its packaging and marketing materials to

---

[12] *Id.*

[13] Rainforest Alliance, What is Mass Balance?, Youtube.com, https://www.youtube.com/watch?v=XPCPGNJ8xpI (last visited Apr. 24, 2025)

[14] *Id.*

reflect that its bottles "on average" contained recycled material, and that this claim was made through a "mass balance allocation process."[15]

33.     Similarly, in the cocoa industry, Vego's Vegolino Praline product disclaims on the back label that "Sugar, cocoa, vanilla are sourced, traded, and audited as Fairtrade, total 71.9%. Fairtrade sugar and cocoa *may be mixed with non-certified sugar and cocoa on a mass balance basis*."[16]  While such disclaimers are still insufficient as they are not on the front label, and downplay the extent that mass balance mixes certified and non-certified ingredients, these examples demonstrate that Defendant can and should do better in disclosing its mass balance practices to consumers.

**E.  Mass Balance Claims Deceive Consumers and Enable Greenwashing.**

34.     Defendant's    unqualified    "100%"    claim    for    mass-balanced    cocoa    is "greenwashing"—deceptively marketing a product as having a sustainable composition it does not possess.[17]

35.     Mass balance without disclosure allows companies to market benefits without guaranteeing product composition or traceability.[18] It breaks the link between purchase and source composition.[19]

36.     The *New York Times* recently exposed the "mass balance" accounting trick that lets manufacturers claim their products are made with recycled or sustainable inputs even when the physical item may contain little—or none—of the touted material. The article, regarding the sourcing of recycled plastic for water bottles using a mass balance system, makes the point bluntly:

---

[15] Julie Creswell and Hiroko Tabuchi, "Is Your Water Bottle Really Made From Recycled Plastic?" *The New York Times*, Aug. 26, 2024 (discussing mass balance accounting in recycled plastics)
[16] Vego Organic Vegolino Fine Nougat Pralines 180g, AMAZON.AU, https://www.amazon.com.au/Vego-Organic-Vegolino-Nougat-Pralines/dp/B01EUY78B0 (last visited Apr. 24, 2025) (emphasis added).
[17] *See, e.g.*, Tulipshare, What is Chocolate Washing?, https://tulipshare.com/work/what-is-chocolate-washing; Laura Paddison, 'Pure greenwashing', Greenpeace Unearthed (Mar. 4, 2022), https://unearthed.greenpeace.org/2022/03/04/eu-deforestation-lobbying-cop26/.
[18] *Id.*
[19] *Id.*

"there is no guarantee that any particular bottle, pair of sunglasses or power tool actually contains recycled plastic."[20] The senior technical leader for the plastic supplier admitted the recycled content in any given product could be "very low" and that "[y]ou can't know how much."[21] Experts on consumer labeling warn that uncoupling recycled-content claims from the actual goods "effectively destroys truth in labeling."[22]

37.    Defendant employs the same deception regarding cocoa composition and traceability: it uses mass balance, mixes cocoa, cannot verify the content of specific packages, yet labels them "100% Sustainably Sourced."

38.    This misleading practice contravenes principles of truthful advertising reflected in the FTC's Green Guides. The Guides state marketers making environmental claims must possess substantiation for all reasonable interpretations of their claims.[23] They strongly caution against using broad, unqualified general environmental benefit claims like "sustainable" because "it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims."[24] A claim like Defendant's "100% Sustainably Sourced Cocoa," reasonably interpreted by consumers to refer to the product's composition, is precisely the type of broad, unqualified claim the FTC advises against without clear qualification and robust substantiation.

**F.  Plaintiff Was Misled by Defendant's False Promise**

39.    Plaintiff saw the "100% Sustainably Sourced Cocoa [-] Cocoa Life" representation and the Cocoa Life logo on the Products he purchased.

40.    Plaintiff understood this as a promise about the Products' composition and verifiable origin—that all cocoa *inside* the package came from Cocoa Life sourced cocoa.

---

[20] Julie Creswell & Hiroko Tabuchi, Is Your Water Bottle Really Made From Recycled Plastic?, *New York Times*, Aug. 26, 2024.
[21] *Id.*
[22] *Id.*
[23] *See* FTC, Guides for the Use of Environmental Marketing Claims ('Green Guides'), 16 C.F.R. §§ 260.2, 260.4(b) (2012).
[24] *Id.*

41.    Plaintiff relied on these representations about the Products' composition and traceability and sourcing when choosing to purchase the Products over other alternatives.

42.    Had Plaintiff known the promise about composition and traceability was false due to mass balance, he would not have bought the Products or would have paid less.

43.    Plaintiff suffered economic injury. He paid for a product falsely represented as containing 100% Cocoa Life sustainable cocoa but received a product with uncertain composition and traceability.

**G. Defendant's Deceptive Labeling Creates Ongoing Harm**

44.    Plaintiff wants Defendant to use accurate labeling. Plaintiff enjoys OREOs and would buy them again if he could trust the label. Absent an injunction, Plaintiff cannot rely on the Defendant's representations as Plaintiff does not have insight into Defendant's future ingredient sourcing mechanisms.

45.    If Defendant accurately represented the composition / traceability or clearly explained mass balance on the package, Plaintiff would consider buying again.

46.    But given Defendant's past deception and lack of transparency, Plaintiff cannot trust Defendant's marketing without court intervention. He cannot verify Defendant's internal practices.

47.    Plaintiff faces imminent future harm: being unable to rely on Defendant's labels, he will either be misled again or forced to avoid OREOs he might otherwise buy.

48.    Plaintiff needs an injunction requiring Defendant to stop deceptively using the unqualified "100% Sustainably Sourced Cocoa [-] Cocoa Life" claim on mass-balanced products or provide clear packaging disclosures about mass balance and its compositional impact.

**H. No Adequate Remedy at Law**

49.    Plaintiff seeks damages and, in the alternative, restitution and other equitable relief. Plaintiff lacks an adequate remedy at law because legal damages may not fully compensate Plaintiff and the Class for the deception, and calculating the precise economic loss (e.g., the exact

price premium attributable to the misleading claim) may be difficult or uncertain. Restitution, which focuses on restoring the unjustly obtained benefits to Defendant, provides a more certain and direct equitable remedy for the harm caused by Defendant's deceptive practices, particularly where consumers purchased products they would not have bought at all but for the misrepresentation. Furthermore, injunctive relief is necessary to prevent future harm, which monetary damages alone cannot achieve.

## V.    CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**California Class**
All persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more of the Products (the "California Class")

**California Consumer Subclass**
All residents of California who purchased the Products for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass") (together with the California Class, the "Class").

51.    Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveals that the Class should be expanded or narrowed, divided into addition subclasses under Rule 23(c)(5), or modified in any other way.

52.    The following people and entities are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

53.     The action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

### Numerosity

54.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members. Class members can be identified through Defendant's sales records, third-party sale records, and public notice.

### Predominance of Common Questions

55.     Common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Class. Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

56.     Specifically, common questions of law and fact include, without limitation:

(1)  whether Defendant made false or misleading statements of fact in their labeling and advertising of the Products;

(2)  whether reasonable consumers would rely upon Defendant's labeling and advertising of the Products;

(3)  whether Defendant knew or should have known their representations were false or misleading;

(4)  whether certification of the Class is appropriate under Rule 23;

(5)  whether Defendant violated California's consumer protection statutes;

(6)  whether Defendant committed a breach of an express or implied warranty; and

(7)  damages needed to reasonably compensate Plaintiff and the proposed Class.

### Typicality & Adequacy

57.     Plaintiff's claims are typical of the proposed Class.  Like the proposed Class, Plaintiff purchased the Products. Moreover, there are no conflicts of interest between Plaintiff and the Class.

### *Superiority*

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    <u>CLAIMS</u>

### <u>First Cause of Action</u>
### Violation of California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500, et seq.
### (*On behalf of the Class*)

59.     Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant pursuant to California's False Advertising Law ('FAL'), Cal. Bus. & Prof. Code § 17500, et seq.

61.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public... in any advertising device... or in any other manner or means whatever, including over the Internet, any statement, concerning... personal property or services... which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

62.     Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed Class, through its deceptive labeling and advertising, that the Products contain "100% Sustainably Sourced Cocoa" from "Cocoa Life," implying a specific composition which is not guaranteed due to the undisclosed use of mass balance. Because

Defendant has disseminated misleading information regarding the Products' cocoa composition, and Defendant knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading in light of its mass balance system, Defendant has violated the FAL

63.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the Class. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to Plaintiff and members of the proposed Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Class may be irreparably harmed and/or denied an effective and complete remedy.

**Second Cause of Action**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq.***
**(*On behalf of the California Consumer Subclass*)**

64.     Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ('CLRA'), Cal. Civ. Code § 1750, et seq.

66.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

67.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have...." By using the "100% Sustainably Sourced Cocoa [-] Cocoa Life" representation on the labeling and advertising of the Products, Defendant has represented and continues to represent that the Products have characteristics and ingredients (i.e., that the Products' cocoa ingredient is

composed entirely of sustainable cocoa sourced from Cocoa Life) that they do not have, due to the use of the mass balance system. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

68.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By using the "100% Sustainably Sourced Cocoa [-] Cocoa Life" representation on the labeling and advertising of the Products, Defendant has represented and continues to represent that the Products are of a particular standard, quality, or grade that they do not meet, due to the use of the mass balance system. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

69.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By using the "100% Sustainably Sourced Cocoa [-] Cocoa Life" representation on the labeling and advertising of the Products, and not delivering Products' which contain 100% sustainably sourced cocoa from cocoa life, Defendant has advertised the Products with characteristics it intended not to provide, or knew it could not guarantee, to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

70.    At all relevant times, Defendant has known or reasonably should have known that the "100% Sustainably Sourced Cocoa [-] Cocoa Life" representation on the Products is false and deceptive, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on this unqualified representation when purchasing the Products. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing the Products' cocoa composition meets the represented standard.

71.    Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the California Consumer Subclass.

72.     Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth that the Products do not contain 100% certified Cocoa life cocoa.

73.     Under Cal. Civ. Code § 1780(a), Plaintiff and California Consumer Subclass members currently seek injunctive relief for Defendant's violations of the CLRA.

74.     On January 30, 2025, Plaintiff mailed notice to Defendant of its CLRA violations pursuant to Cal. Civ. Code § 1782. Defendant has not agreed to correct the problem for Plaintiff and for each member of the California Consumer Subclass within 30 days of receipt. Thus, Plaintiff and the California Consumer Subclass seek all monetary relief allowed under the CLRA, including actual damages, restitution, and punitive damages.

75.     Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached to this Complaint as Exhibit B.

<u>**Third Cause of Action**</u>
**Violation of California's Unfair Competition Law**
**California Business & Professions Code § 17200,** *et seq.*
**(*On behalf of the Class*)**

76.     Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

77.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant pursuant to California's Unfair Competition Law ('UCL'), Cal. Bus. & Prof Code § 17200, et seq.

78.     The UCL provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising...."

79.     <u>Unlawful Prong</u>: Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's "100% Sustainably Sourced Cocoa [] Cocoa Life" representations are "unlawful" as they violate the CLRA and FAL. As a result of

Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the proposed Class.

80.    <u>Unfair Prong</u>: Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' labeling. Deceiving consumers into believing they will receive Products whose cocoa composition is 100% certified Cocoa Life cocoa is of no benefit to consumers, especially when they may pay a premium for this assurance. The practice harms consumer trust and fair competition. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed Class.

81.    <u>Fraudulent Prong</u>: Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because its unqualified "100% Sustainably Sourced Cocoa [-] Cocoa Life" claim has the effect of deceiving consumers into believing the Products' cocoa composition meets a standard that Defendant cannot guarantee due to its use of mass balance. Because Defendant misled Plaintiff and members of the Class about the Products' cocoa composition, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

82.    Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to him and members of the proposed Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or

violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Class may be irreparably harmed and/or denied an effective and complete remedy.

83. Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendant's labeling is false and misleading. Its labeling is likely to deceive, and did deceive, reasonable consumers like Plaintiff.

84. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

85. Defendant's conduct violated the public policy against false and misleading labeling and advertising, which is tethered to the CLRA and the FAL.

86. For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements and omissions when purchasing the Products. In addition, class reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

87. Defendant's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of Class members.

88. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the Products, or would have paid less for them, if they had known the truth about the Products composition.

**Fourth Cause of Action**
**Breach of Express Warranty**
(***on behalf of the Class***)

89. Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

90. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

91. California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis

of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

92.    Defendant has expressly warranted on the Products' labeling and advertising that the Products' cocoa ingredient composition meets the standard of "100% Sustainably Sourced Cocoa" from "Cocoa Life".

93.    Defendant's "100% Sustainably Sourced Cocoa [-] Cocoa Life" representation on the Products' labeling and advertising is: (a) an affirmation of fact or promise made by Defendant to consumers regarding the composition of the cocoa ingredient; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other Class members relied on the representation; and (c) created an express warranty that the Products' cocoa composition would conform to the affirmation of fact or promise. In the alternative, the representation about the Products is a description of goods which was made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description regarding cocoa composition.

94.    Plaintiff and members of the Class reasonably and justifiably relied on the foregoing express warranty, believing the Products' cocoa composition met the represented standard.

95.    Defendant has breached the express warranty made to Plaintiff and members of the Class by failing to provide Products whose cocoa composition verifiably conforms to the "100% Sustainably Sourced Cocoa [-] Cocoa Life" representation, due to the use of the mass balance system and mixing of cocoa sources.

96.    Plaintiff and members of the Class paid for the Products but did not obtain the full value of the Products as represented regarding their cocoa composition. If Plaintiff and members of the Class had known the truth about the Products' cocoa composition, they would not have been

willing to pay the price associated with them, or would have paid less. As a result, Plaintiff and members of the Class suffered injury and deserve to recover all damages afforded under the law.

97. On January 30, 2025, Plaintiff notified Defendant of its breach of warranty by way of a notice letter outlining the foregoing allegations.

**Fifth Cause of Action**
**Breach of Implied Warranties**
(***on behalf of the Class***)

98. Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

99. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

100. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as... (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

101. Defendant is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

102. By advertising the claim "100% Sustainably Sourced Cocoa [-] Cocoa Life" on the Products' labeling and advertising, Defendant made an implied promise that the Products' cocoa composition conformed to this affirmation. However, the Products have not "conformed to the promises... made on the container or label" because the Products' cocoa composition is not guaranteed to meet this standard due to the mass balance system. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

103.    If Plaintiff and members of the Class had known that the Products' "100% Sustainably Sourced Cocoa [-] Cocoa Life" representation did not accurately reflect the guaranteed composition, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the Class have suffered injury and deserve to recover all damages afforded under the law.

104.    On January 30, 2025, Plaintiff notified Defendant of its breach of warranty by way of a notice letter outlining the foregoing allegations.

105.    Plaintiff and members of the Class are in privity with Defendant, or privity is not required because they are the intended end-consumers for whom the labeling affirmations about composition were made, and they suffered economic loss due to the breach.

**Sixth Cause of Action**
**Quasi Contract/Unjust Enrichment/Restitution**
**(*On behalf of the Class*)**

106.    Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

107.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

108.    As alleged herein, Defendant has intentionally made misleading representations regarding the cocoa in the Products to Plaintiff and members of the Class to induce them to purchase the Products. Plaintiff and members of the Class have reasonably relied on the misleading representations and have not received all of the benefits and promises (that the Products' cocoa is comprised of 100% Cocoa Life cocoa) made by Defendant through the Products' representations. Plaintiff and members of the proposed Class have therefore been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

109.    Plaintiff and members of the Class have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiff and members of the proposed Class.

110.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Class—i.e., Plaintiff and members of the proposed Class did not receive the full value of the benefit conferred upon Defendant due to the misrepresentations about the Products' composition. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it.

111.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

## Seventh Cause of Action
### Negligent Misrepresentation
### (*On behalf of the Class*)

112.    Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

113.    Plaintiff brings this cause of action on behalf of himself and members of the Class.

114.    As alleged herein, Defendant made positive assertions and representations of material fact to Plaintiff and Class members concerning the composition of the cocoa in the Products, specifically the "100% Sustainably Sourced Cocoa [-] Cocoa Life" claim.

115.    These representations were false because, due to the use of mass balance, the cocoa in the Products is not comprised of 100% Cocoa Life cocoa.

116.    Defendant made these representations without reasonable grounds for believing them to be true. Defendant knew or should have known about its use of the mass balance system and that this system prevented the Products to be comprised of 100% Cocoa Life cocoa as reasonably expected by consumers (i.e., pertaining to the physical contents). Defendant owed a duty to Plaintiff and Class members to disclose accurately the nature of its sourcing and the composition of the Products.

117.    Defendant made these representations with the intent to induce Plaintiff and Class members to purchase the Products.

118.    Plaintiff and Class members reasonably relied on Defendant's misrepresentations when purchasing the Products.

119.    As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and Class members suffered damages because they purchased products they would not have otherwise purchased or paid a price premium based on the false representations about the cocoa's composition.

### Eighth Cause of Action
### Intentional Misrepresentation / Fraud
### (*On behalf of the Class*)

120.    Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

121.    Plaintiff brings this cause of action on behalf of himself and members of the Class.

122.    As alleged herein, Defendant made representations of material fact to Plaintiff and Class members concerning the composition of the cocoa in the Products, specifically the "100% Sustainably Sourced Cocoa [-] Cocoa Life" claim.

123.    These representations were false. Defendant knew these representations were false when made, or made them with reckless disregard for their truth, because Defendant implemented the mass balance system which inherently prevents the claim from being true regarding composition as understood by consumers.

124.    Defendant also actively concealed the material fact that its use of mass balance meant the Products will not contain 100% Cocoa Life cocoa.

125.    Defendant made these false representations and concealed material facts with the intent to defraud and induce Plaintiff and Class members to purchase the Products.

126.    Plaintiff and Class members reasonably relied on Defendant's false representations and concealment when purchasing the Products.

127.    As a direct and proximate result of Defendant's intentional misrepresentations and fraudulent concealment, Plaintiff and Class members suffered damages, including economic losses from purchasing the Products under false pretenses regarding their composition and

CLASS ACTION COMPLAINT

traceability. Defendant's conduct was malicious, oppressive, or fraudulent, warranting an award of punitive damages.

## VII.    **RELIEF**

128.    Plaintiff seeks the following relief for himself and the proposed Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VIII.    **DEMAND FOR JURY TRIAL**

129.    Plaintiff demands the right to a jury trial on all claims so triable.


Dated: May 2, 2025                    Respectfully submitted,

By: */s/ Joshua Nassir*
Joshua Nassir (Cal. Bar No. 318344)
jnassir@treehouselaw.com
Benjamin Heikali (Cal. Bar No. 307466)
bheikali@treehouselaw.com
Ruhandy Glezakos (Cal. Bar No. 307473)
rglezakos@treehouselaw.com
Ammad Bajwa (Cal. Bar No. 358564)
abajwa@treehouselaw.com
TREEHOUSE LAW, LLP
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT