UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JEREMIAH PEARSON, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MONDELEZ GLOBAL LLC,<br><br>　　　　Defendant. | No. 2:25-cv-01270 WBS SCR<br><br>MEMORANDUM AND ORDER RE: DEFENDANT MONDELEZ GLOBAL LLC'S MOTION TO STAY OR TRANSFER VENUE |

----oo0oo----

　　　Plaintiff Jeremiah Pearson brought this putative class action against defendant Mondelez Global LLC, claiming consumer protection and contract law violations in connection with an allegedly deceptive label on defendant's product. (See Compl. (Docket No. 1) ¶¶ 1-5.) Defendant now moves to stay under the first-to-file rule on the grounds that plaintiff's action mirrors another consolidated class action currently pending in the Northern District of Illinois. (See Docket No. 9 at 1-2.)

1

Defendant requests in the alternative to transfer venue pursuant to 28 U.S.C. § 1404(a).  (See id.)

I.   Factual and Procedural Background

Defendant is a subsidiary of Mondelez International, Inc. ("MII"), one of the largest snack food and chocolate companies in the world.  (See Docket No. 9-8 ¶ 1.)  One of MII's products is OREO cookies, which defendant is "responsible for manufacturing, distributing, and marketing" within the United States.  (Docket No. 9 at 8.)

A label on OREO products states the cookies are made with "100% Sustainably Sourced Cocoa."  (Compl. ¶¶ 1-2.)  The label is accompanied by defendant's "Cocoa Life" logo, which refers to their "global cocoa 'sustainability' program, designed to 'make cocoa right'" by attempting to mitigate the humanitarian and environmental harms wrought by the cocoa industry.  (Id. ¶¶ 17-18.)

Plaintiff alleges this label is false, because "[d]efendant uses an accounting method called 'mass balance,'" which "allows [d]efendant to mix cocoa beans from Cocoa Life farms with non-certified cocoa beans from other farms."  (Id. ¶¶ 19-20.)  Such allegedly mixed sourcing results in cookies with an "uncertain composition."  (Id. ¶ 7.)

This class action was preceded by two others with which it shares a factual background.  (See Docket No. 9-2 ¶¶ 2-3.)  The first was filed in the Northern District of California by Megan Waggener against MII, the second in the Northern District of Illinois by Tim Gollogly, also against MII.  (See id. ¶¶ 2-3.)  Judge Martínez-Olguín of the Northern District of California

1   granted MII's request to transfer the Waggener action to the
2   Northern District of Illinois, and thereafter the cases were
3   consolidated.  (See Docket No. 9 at 4.)
4          The consolidated class action complaint ("the Waggener
5   complaint") also claims the OREO label is false.  (See Docket No.
6   9-8 ¶ 4.)  The Waggener complaint -- like plaintiff's -- takes
7   issue with mixed cocoa sourcing, but Waggener's primary grievance
8   appears to be with the unethical consequences of that practice
9   rather than the resulting uncertainty in product composition.
10  (See Docket No. 9-8 ¶ 4.)
11  II.  Legal Standard
12         The first-to-file rule is "a judicially created
13  doctrine of federal comity, which applies when two cases
14  involving substantially similar issues and parties have been
15  filed in different districts."  In re Bozic, 888 F.3d 1048, 1051
16  (9th Cir. 2018) (internal quotation marks and citations omitted).
17  "Under that rule, the second district court has the discretion to
18  transfer, stay, or dismiss the second case in the interest of
19  efficiency and judicial economy."  Id. at 1051-52 (internal
20  quotation marks and citation omitted).
21         To determine whether to apply the rule, a district
22  court considers three factors: "chronology of the lawsuits,
23  similarity of the parties, and similarity of the issues."  Kohn
24  Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc., 787 F.3d 1237,
25  1240 (9th Cir. 2015).  "When applying the first-to-file rule,
26  courts should be driven to maximize 'economy, consistency, and
27  comity.'"  Id. (quoting Cadle Co. v. Whataburger of Alice, Inc.,
28  174 F.3d 599, 604 (5th Cir. 1999)).

1           The first-to-file rule "is not a rigid or inflexible
2  rule to be mechanically applied, but rather is to be applied with
3  a view to the dictates of sound judicial administration."
4  Pacesetter Sys. Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th
5  Cir. 1982).  "District court judges can, in the exercise of their
6  discretion, dispense with the first-filed principle for reasons
7  of equity."  Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d
8  622, 628 (9th Cir. 1991).  "The circumstances under which an
9  exception to the first-to-file rule typically will be made
10 include bad faith, anticipatory suit, and forum shopping."  Id.
11 III. Discussion
12          It is undisputed that the Waggener case was filed prior
13 to the instant case.  (See Docket No. 11 at 3.)  The dispute here
14 is whether the parties and issues in both actions are
15 sufficiently similar to satisfy the first-to-file rule's
16 remaining factors.  (See id.)
17      A.   Similarity of Parties
18          The first-to-file rule does not require exact identity
19 of parties, "only substantial similarity."  See Kohn Law Group,
20 Inc. v. Auto Parts Mfg. Mississippi, Inc., 787 F.3d 1237, 1240.
21 In putative class actions, the classes are compared rather than
22 the named plaintiffs.  See Bates-Ferreira v. Swedish Match North
23 America, LLC, No. 2:24-cv-00987 TLN CKD, 2025 WL 950506, at *3
24 (E.D. Cal. Mar. 28, 2025) (citing Pedro v. Millenium Prods.,
25 Inc., No. 15-cv-05253 MMC, 2016 WL 3029681, at *3 (N.D. Cal. May
26 26, 2016)).  "[P]roposed classes in class action lawsuits are
27 substantially similar where both classes seek to represent at
28 least some of the same individuals."  Wallerstein v. Dole Fresh

4

1  Vegetables, Inc., 967 F. Supp. 2d 1289, 1296 (N.D. Cal. 2013).

2        The class in the Waggener complaint is comprised of "[a]ll United States residents who purchased Mondelez Products marked with the 'Cocoa Life' seal . . . '100% sustainable' . . . or any other sustainability claims within the United States during the four-year period" preceding the filing of the complaint.  (Docket No. 9-8 ¶ 63.)  Plaintiff seeks to represent "[a]ll persons who, while in the state of California and within the applicable statute of limitations period, purchased one of more of the [OREO products]."  (Compl. ¶ 50.)[1]

      The classes here are substantially similar.  The Waggener plaintiff seeks to represent a nationwide class of which individuals in plaintiff's statewide class are members; the former encompasses the latter.  Both classes assert claims on behalf of consumers in the United States who purchased OREO cookies in an overlapping timeframe.  The claims are asserted against a parent company in one case, and its subsidiary in the other.  Both classes clearly seek to represent at least some of the same individuals, and plaintiff's choice to sue MII's subsidiary instead of MII directly does not defeat substantial similarity.  See Kohn, 787 F.3d at 1240 (finding the parties were substantially similar even though the defendant in one case was not a named party in the other case); see also Adoma v. University of Phoenix, Inc., 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010) ("[T]he proposed classes for the collective actions

---

[1] Although there are are references to consumer reliance in both plaintiff's complaint in this action and the Waggener complaint (See Compl. ¶ 9; Waggener Compl. ¶ 61.), reliance is not part of either cases' class definitions.

are substantially similar in that both classes seek to represent at least some of the same individuals.").

### B. Similarity of Issues

As with parties, "the issues in two actions need not be identical . . . only 'substantially similar.'" Id. (citing Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)). "When analyzing whether issues are substantially similar, a court considers if the common facts, taken together, would lead to the same central question between the cases." Bates-Ferreira, 2025 WL 950506, at *4 (citing Adoma, 711 F. Supp. 2d at 1148).

Plaintiff contends the issues between the cases are distinct because the Waggener complaint "challenges the alleged unsustainability of Defendant's cocoa sourcing," whereas plaintiff in this case is not concerned with sustainability, only whether defendant's cocoa is sourced entirely from the Cocoa Life program. (Docket No. 11 at 4.)

As a preliminary matter, this denial of any interest in sustainability in this case is belied by plaintiff's complaint, in which variations of the term "sustainable" are used forty-five times, often to describe the Cocoa Life program or to characterize consumer deception. (See Compl. ¶¶ 4-7, 9, 17, 27, 30, 34, 36, 38, 67.) The complaint also accuses defendant of "'greenwashing,' deceptively marketing a product as having a sustainable composition it does not possess," again indicating a concern with ethical production rather than strictly product composition. (Id. ¶ 34.) The issue of sustainability permeates plaintiff's complaint in this case, suggesting the sort of

6

1  "substantial overlap" of factual issues to support a finding of
2  substantial similarity.[2]  See Kohn, 787 F.3d at 1247.
3         But the decisive problem for plaintiff is that his case
4  shares a central question with Waggener: both parties want to
5  know how MII sources its cocoa.  To that end, both actions bring
6  claims for violations of the California Consumers Legal Remedies
7  Act, California Unfair Competition Law, and unjust enrichment.
8  (See Docket No. 9 at 9.)  Regardless of the underlying motives
9  for these claims, litigating them will undoubtedly involve
10 similar discovery, similar witnesses, and similar motion practice
11 to determine what is ultimately critical to their determinations:
12 whether MII's "100% Sustainably Sourced Cocoa" label is
13 deceptive.  A fabricated difference in the reasons for asking
14 that question does not undermine the fundamental similarity in
15 the methods for answering it.
16        At oral argument plaintiff emphatically cited Hernandez
17 v. Event Tickets Ctr., Inc. for the proposition that two cases
18 with differing deceptions cannot be substantially similar.  No.
19 2:24-cv-01983 DAD AC, 2025 WL 1067714, at *3 (E.D. Cal. Apr. 9,
20 2025).  But the deceptions in Hernandez were substantively
21 distinct, as the cases involved an omission regarding pricing on
22 the one hand, and affirmative misrepresentations regarding venue

---

[2]  It is worth noting that the plaintiff in Waggener submitted an opposition to defendant's motion to dismiss in which she alleged "Mondelez does not claim, nor can it plausibly suggest, that cocoa harvested with child labor is segregated from other inputs."  (Docket No. 13-2 at 16.)  This language targets MII's supply chain, rather than sustainability more generally, and aligns the Waggener case even more closely with plaintiff's case here.

1  and inventory on the other.  Id.  The language, subject matter,
2  and aim of the alleged deceptions differed.  Id.  That is not the
3  case here: these actions focus on the same language, written on
4  the same label, invoking the same subject matter, and promoting
5  the same product.
6          This action is not the first-filed action and the
7  parties and the issues in plaintiff's case are substantially
8  similar to those in the Waggener case.  Accordingly, the first-
9  to-file rule applies.

10 IV.  Staying or Transferring the Action
11         Defendant's first-to-file analysis underlies their
12 request for a stay.  However, they go on to state in the
13 alternative that "even if the court were not inclined to stay or
14 dismiss this case under the 'first-to-file' rule, it should
15 transfer the case" pursuant to 28 U.S.C. § 1404(a).  (Docket No.
16 9 at 10.)
17         The first-to-file rule provides independent discretion
18 for transfer, and "§ 1404(a) cabin[s] the exercise of that
19 discretion" only in that the transferee venue must be proper.
20 See Bozic, 888 F.3d at 1054 (a district court relying solely on
21 first-to-file in transferring "could only transfer [the] action
22 to a district 'where it might have been brought'").  The other
23 factors of § 1404(a) may also be considered, but they are not
24 strictly required to justify transfer when first-to-file applies.
25 See Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 96
26 (9th Cir. 1982) ("In appropriate cases it would be relevant for
27 the court in the second-filed action to give consideration to the
28 convenience of the parties and witnesses.").

8

         Plaintiff does not dispute this action "might have been brought" in the Northern District of Illinois, nor could he; defendant is headquartered there, and personal jurisdiction and venue are "unquestionably proper." (Docket No. 9 at 11.)

         The other class actions have already been consolidated in Illinois, an interim class counsel has been appointed, and a motion is currently pending there dealing with many of the same issues presented by this case. (See Docket No. 11 at 4.) Merely pausing plaintiff's action while Waggener proceeds in Illinois would segregate the parallel cases, creating a likelihood of duplicative, cross-country litigation. As Judge Martínez-Olguín noted in her order transferring the original Waggener action, the Northern District of Illinois is also the case's "'center of gravity' -- where the key witnesses and documents are located," so transfer promises an "overall reduction of litigation costs." van Meter v. Mondelez International, Inc., No. 24-cv-00564 AMO, 2025 WL 875391, at *3 (N.D. Cal. Mar. 18, 2025).

         Based on the foregoing, the first-to-file factors weigh in favor of transfer to the Northern District of Illinois, where venue is proper and where the likelihood of consolidation supports judicial economy. Accordingly, the case will be transferred to that district.

         IT IS THEREFORE ORDERED that defendant's motion to transfer venue (Docket No. 9) be, and the same hereby, is GRANTED. This action is hereby TRANSFERRED to the Northern District of Illinois for all further proceedings. The Clerk of

```
1  this court is instructed to close this case after transfer is
2  complete.³
3  Dated:    September 4, 2025
                                    WILLIAM B. SHUBB
4                                   UNITED STATES DISTRICT JUDGE
```

---

³ Transfer being granted, defendant's motion to stay is DENIED as moot.